# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SUZANNE C. MALLON, | ) |
| | ) |
| Plaintiff, | ) Case No. 03 C 2054 |
| | ) |
| v. | ) Judge Joan Gottschall |
| | ) |
| CONTINENTAL GRAIN COMPANY | ) |
| LONG-TERM DISABILITY | ) |
| BENEFIT PLAN | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Suzanne C. Mallon ("Mallon") has brought this action under the Employee Retirement Income Security Act ("ERISA") 29 U.S.C. § 1001, *et seq.* challenging the termination of her long-term disability benefits under the Continental Grain Company Long-Term Disability Plan ("Plan"). Specifically, Mallon has brought her action under ERISA's civil enforcement provision, seeking to enforce the terms of the Plan. 29 U.S.C. § 1132(a). Before the court are cross motions for summary judgment. For the reasons stated herein, the Plan's motion for summary judgment is granted and Mallon's is denied. Also before the court is the Plan's motion to strike Mallon's "extraneous evidence." The court denies this motion as moot because the information objected to is not determinative of Mallon's claim and the court bases its ruling entirely on the record of Mallon's administrative appeals below.

## BACKGROUND

The parties have provided the entire record upon which LINA based its decision to deny Mallon's claim for ongoing LTD benefits. Until March 1, 1999, Mallon was employed as an

operations administrator at Continental Grain Company, which established the Plan for the benefit of its qualifying employees. The Plan is properly subject to ERISA. Around September 20, 1999 Mallon made a claim for long-term disability ("LTD") benefits to the Plan's claims administrator Life Insurance Company of North America ("LINA"). In its section describing LTD benefits, the Plan states that "[a] period of total disability means any period during which you are continuously prevented from engaging in any occupation for wage or profit." (MA411.)[1] The Plan also places certain general limits on when it will pay LTD benefits:

- for the first 24 months if you cannot perform the duties of your regular job
- thereafter up to retirement if you cannot work at any job for which you are or may become suited for [sic] by education, training or experience
- while you are not engaged in any occupation for wage or profit. (MA412.)

With respect to disability caused by "Mental and Nervous Disorders," the Plan expressly limits payment of LTD benefits to twenty four months unless the participant is institutionalized:

**Mental and Nervous Disorders**
After six consecutive months of total disability due to neurosis, psychoneurosis, psychopathy, psychosis or any other mental or nervous disorder as determined by the Plan Administrator, LTD will pay benefits up to 24 months. If – after that 24 month period – you are receiving treatment for such disability while confined in a hospital or other institution for at least 14 consecutive days, Plan benefits will be paid during that period of confinement and for up to 90 days after discharge from the hospital or institution. In addition, if you are reconfined within that 90-day period for at least 14 consecutive days, Plan benefits will be paid during the period of reconfinement and for up to 90 days after termination of the reconfinement. (MA413.)

Mallon's application for disability benefits states her disability as resulting from her being

"in a dark hole . . . I am still very sad, unmotivated, tired all the time, loss of appetite, unable to

---

[1] Citations to documents in the record use Plaintiff's nomenclature from its Local Rule 56.1 Appendix, which both parties cite as the record in this case.

sleep." (MA374.) Her application was accompanied by an Attending Physician's Statement of Disability signed by Pravin Bhatt, M.D., providing a diagnosis of "major depression." (MA373.) LINA requested records from Mallon's physicians to use in evaluating her claim, and after reviewing these records, awarded her monthly LTD benefits retroactive to September, 1999.

On August 21, 2001, LINA sent Mallon a letter informing her that her LTD benefits were to expire in September, 2001 because "we have no medical evidence to support total disability from any condition other that [sic] a mental nervous condition." (MA251.) Soon after receiving this letter, Mallon appealed to LINA stating that her depression was actually a symptom of systemic lupus erythematosis ("lupus"), which, by causing her depression, was the ultimate cause of her disability. (MA160-61.) Mallon has shown symptoms of lupus since as early as 1990.

Mallon submitted additional evidence to support her appeal, including a November 10, 2001 physician's statement from M.T.K. Ghani, M.D., which contains diagnoses of (among other things) lupus, allergic rhinitis, sinusitis and major depression. (MA231.) With respect to physical limitations, Dr. Ghani's report indicates his opinion that Mallon was not capable of climbing, stooping, kneeling, crouching, crawling or standing, but could reach, walk or sit for up to 2.5 hours per day and could balance for 5.5 hours per day, and further indicated that Mallon could lift, carry, push and pull at "light" levels of activity. (MA233.) During her appeal, at LINA's request Mallon submitted additional supporting information, including a December 5, 2001 letter from Dr. Bhatt stating his opinion that Mallon continued to be totally disabled. (MA144.) There is also an undated letter from Dr. Bhatt attached to Mallon's appeal record stating his opinion that Mallon's "current state of total disability is primarily from her lupus with co-morbid illness of major depression." (MA166.)

3

On December 4, 2001 LINA sent a letter to Mallon denying her appeal because the medical information she had provided did not support her claim to be physically disabled from all employment, leaving her depression as the sole cause of her disability. (MA138-39.) On December 21, 2001, in response to a request for more information from Mallon, LINA sent her a followup letter explaining that, other than Dr. Ghani's statement, no evidence regarding her physical limitations on working had been submitted.

On May 20, 2002, Mallon submitted a request to LINA for a second appeal, enclosing additional medical records, including a letter from Mary Tobin, M.D. and reports by Michael Bednar, M.D. and some physical therapy providers. Dr. Tobin's letter reveals that she had been treating Mallon for 9 years for lupus and other ailments, and opines that Mallon "has a very unpredictable course and has not been able to work over the last 2 years . . . Frequently depression is a prominent feature of SLE [lupus] and can predate the diagnosis or occur at any point in the disease. Currently I believe that due to the progression of her disease she is totally disabled." (MA077.) Dr. Tobin's letter does not specify if Mallon's lupus created a physical disability, or if it was the cause of Mallon's depression. Mallon also attached a March 11, 2002 functional capacity evaluation that was requested by Dr. Bednar which recommends "a return to work within the limits identified during this evaluation." (MA 087.) This report also found that Mallon "is able to perform tasks requiring kneeling, overhead work, squatting, stair climbing, balance and crawling . . . at the Light to Sedentary demand levels for work." *(Id.* at MA086-87.) Dr. Bednar's report also indicates that Mallon may "write or key 30 minutes per hour." (MA014.) Also included was an April 16, 2002 physical ability assessment signed by Dr. Konstantin Dzamashuili, a neurologist. Dr. Dzamashuill's assesment shows his opinion that Mallon is capable of doing work that requires occasional

4

crouching, kneeling, balancing, stair climbing, and standing or walking for no longer than 20 minutes at a stretch. (MA127-28.) In addition to these documents, Mallon's submissions in support of her second appeal included medical records for wrist surgery in 1996, and treatment for vision problems in 1990 and leg pain in the early 1990s.

On August 6, 2002 LINA sent Mallon a letter denying Mallon's appeal and informing her that she had exhausted her administrative remedies. (MA067.) The letter informed Mallon that the information she had submitted did not support a physical explanation for her disability, and referred to the prior letters from LINA denying her claim in the earlier proceedings: "We have already paid the maximum benefit due for the mental problem, and you have provided no medical information to support that your physical problems are severe enough to prevent you from working." (MA068.) After receiving this letter, Mallon filed the instant appeal.

**Standard of Review**

Where an ERISA plan contains no language expressly reserving discretion to the plan administrator to make benefits determinations, the standard of review applied to the plan administrator's determinations is *de novo*. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989). However, if a plan empowers its administrator to "construe doubtful or contested terms," it falls under an exception to *Firestone*'s general rule, and the court instead reviews the administrator's decision to determine if it was arbitrary or capricious. *Firestone*, 489 U.S. at 111; *Fuller v. CBT Corp.*, 905 F.2d 1055, 1059 (7th Cir. 1990). Here, LINA had explicit discretion to determine whether Mallon's disability was due to mental disorders. The Plan states this clearly, "[a]fter six consecutive months of total disability due to neurosis, psychoneurosis, psychopathy, psychosis or any other mental or nervous disorder *as determined by the Plan Administrator*, LTD

5

will pay benefits up to 24 months." (MA1053, emphasis added.) Thus, the court will reverse LINA's determination that Mallon's disability was caused by a mental disorder (depression) only if it is "downright unreasonable." *Donato v. Metro Life Ins. Co.*, 19 F.3d 375, 380 (7th Cir. 1994); *Fuller*, 905 F.2d at 1059.

## Analysis

The essential question in this case is whether LINA reasonably construed the Plan's mental disorders provision to cut Mallon's LTD benefits off at 24 months.

**Lupus-Related Depression**

The court's review of the record confirms that Mallon's initial application for LTD benefits and its supporting documentation cites her depression as the exclusive basis for her disability claim. LINA thus classified this as an LTD claim based on a mental disorder and invoked the Plan's 24 month limitation on such claims.[2] (MA138.)

To controvert this determination, Mallon argues that her disabling depression is actually caused by lupus.[3] Thus, a physical condition is the real cause of her disability and the Plan's mental disorders limitation does not apply. *Kunin v. Benefit Trust Life Insurance Co.*, 910 F.2d 534, 538 (9th Cir. ), cert. denied, 112 L. Ed. 2d 587, 111 S. Ct. 581 (1990) ; *accord Phillips v. Lincoln Nat'l. Life Ins. Co.*, 978 F.2d 302, 311 (7th Cir. 1992). In *Kunin*, the court upheld the district court's

---

[2] LINA's classification of depression as a mental or nervous disorder is reasonable. *See, e.g.*, STEDMAN'S MEDICAL DICTIONARY 348 (5th Lawyer's Ed. 1984) (defining "depression" as "a sinking of spirits so as to constitute a clinically discernable condition."); *Deal v. Prudential Ins. Co. of Am.*, 263 F.Supp.2d 1138, 1142-44 (N.D.Ill. 2003) (assuming without comment that depression is mental disorder under ERISA plan).

[3] Mallon states this explicitly in her August 28, 2001 letter initiating her first appeal: "When I filed for depression back in March 1999, I truly believed it was due to work circumstances and some personal issues . . . I realize now it is a symptom of an illness [lupus]."

6

finding that a participant's behavioral disorders did not bring him under the plan's mental illness coverage limitation because the behavioral disorders arose from autism, a disease with an organic (i.e. physical) cause. *Kunin*, 910 F.3d at 538. Thus, the behavioral disorders at issue were just manifestations of a physical problem, and did not qualify as "mental illness." *Id.* A key factor in the court's decision there was that the ERISA plan in question did not define mental illness or specify that a mental illness referred only to manifestations of behavior, without reference to the behavior's underlying cause. *Id.* at 541. Thus, construing the plan against the drafter, the court agreed that the plain meaning of "mental illness" included only behavioral disorders without ascertainable organic causes. 910 F.2d at 538.

*Phillips* adopts *Kunin's* rationale, quoting *Kunin* to say that where a plan does not contain any "definition or explanation of the term 'mental illness,' and offers no illustration of the conditions that are included or excluded," the term is ambiguous and thus includes only behavioral disorders caused by environmental factors, but not mental disorders that are manifestations of an underlying physical condition. *Phillips*, 978 F.2d at 310. The language of the Plan here includes the following list of example mental disorders, "neurosis, psychoneurosis, psychopathy, and psychosis." Each of these examples describes a behavioral disorder, without reference to its cause, implying that the Plan's definition of mental disorder accords with the holding in *Kunin* and *Phillips*, i.e. that mental disorders are to be determined solely by reference to their behavioral aspects. *See also* STEDMAN'S MEDICAL DICTIONARY 949 (5th Lawyer's Ed. 1984) (defining "neurosis" as "[a] psychological or behavioral disorder in which anxiety is the primary characteristic. . . . In contrast to the psychoses, persons with a n. do not exhibit gross distortion of reality or disorganization of personality.") The effect of this is to limit LINA's ability to impose the 24 month mental disorders benefits limitation

7

to situations where the participant exhibits behavioral disorders that do not arise out of underlying physical conditions.

Even under this restrictive definition, LINA's determination that Mallon's LTD benefits were subject to the mental disorders limitation was justified. LINA acted reasonably in determining that it was Mallon's depression independent of her lupus that caused her disability.

Mallon's strongest evidence that lupus is the cause of her depression is inconclusive. For example, a December 5, 2001 letter from Dr. Bhatt (Mallon's attending psychiatrist) submitted in support of her LTD appeals by Mallon does not name lupus as the cause of her depression or as the cause of her disability.[4] Also in support of her lupus-depression causation theory, in the course of her appeals Mallon had provided other submissions from Dr. Bhatt, but these statements can actually be read to support the opposite contention - that Mallon's lupus and depression are separate diseases. For example, Dr. Bhatt's September 1, 2001 attending physician's statement of disability summarizes Mallon's condition as a "two illness complex [major depression and lupus] that are both intertwined by their pathology leading to current state of severe depression." (MA179.) Another (handwritten) letter from Dr. Bhatt (undated, although LINA does not dispute Mallon's assertion that it was sent on November 7, 2001) seems to confirm his prior "two illness" diagnosis, describing Mallon as having lupus with a "co-morbid" illness of depression. This letter, however, is self-

---

[4] The letter states, "Ms. Mallon's current medical state is total disability. This condition does not allow her to hold or work at any job . . . Her ailments include but are not limited to the following, extreme fatigue, inability to concentrate and focus, difficulty being able to get to sleep and any type of stress worsens her condition. . . . Because of these reasons, an employer cannot reasonably rely upon Ms. Mallon to perform the duties of a job on a regular basis regardless of the job's duties and requirements. Ms. Mallon's physical limitations lead to an inability to perform even the most basic tasks of any job on a regular and consistent basis."

contradictory, later describing Mallon's lupus and depression as "associated."[5]

Mallon also submitted an April 5, 2002 letter from Mary Tobin, M.D. as support for her claim that lupus caused her depression. Dr. Tobin's letter informs LINA that Mallon's medical conditions have included chronic fatigue, arthralgias, myalgias, lupus, allergic rhinitis, chronic sinusitis and bronchitis. (MA011.) Referring to these ailments, Dr. Tobin states that Mallon "has a very unpredictable course and has not been able to work over the last 2 years. It is very difficult to have a full time job when you can only count on feeling well for a few days in succession. Frequently depression is a prominent feature of [lupus] and can predate the diagnosis or occur at any point in the disease. Currently I believe that due to the progression of her disease she is totally disabled." As with the letters from Dr. Bhatt, Dr. Tobin's letter does not clearly adduce a causal connection between Mallon's lupus and depression. The court also notes that information regarding lupus submitted by Mallon in support of her claim does not refer to depression as a defining feature of lupus' pathology, nor as one of its diagnostic criteria. (MA175-76; MA184-189.)[6]

These letters from Drs. Bhatt and Tobin make it clear that Mallon is ill, and is likely depressed. They fall short, however, of establishing that Mallon's depression is caused by her lupus. Mallon quotes *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003) to say that "[p]lan

---

[5] The entire text of Dr. Bhatt's November 7 letter is: "Ms. Mallon has been under my care for treatment of major depression. Patient however has also systemic lupus which is well known to have a high incidence of co-morbid illness of depression. I suspect in Ms. Mallon's case her depression is secondary to her lupus. Patient has no history of psychiatric illness. Her pathology of depression and lupus both are directly associated with each other. Hence in my opinion her current state of disability is primarily from her lupus with co-morbid illness of major depression."

[6] The court notes that the Appendix to Plaintiff's LR 56.1 Statement submitted in support of Mallon's summary judgment brief is missing pages MA186, MA188, and MA190.

9

administrators may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." While this proposition is clearly true, the court finds that Mallon has not presented clear evidence to support that her depression is caused by lupus, and LINA acted reasonably in attributing her disability to the mental condition of depression, standing independently of any physical cause.[7]

**Other Physical Disability**

After Mallon informed LINA that her disability was the result of lupus, LINA began an inquiry into whether Mallon was physically disabled, apart from her depression. This inquiry was made to determine if Mallon qualified under the Plan's general LTD benefits provision, which allows only 24 months of LTD benefits if the participant cannot perform her regular job duties, but allows benefits through retirement age if the participant "cannot work at any job for which you are or may become suited for [sic] by education, training or experience."[8] (MA412.) While Mallon provided records to LINA that she has been undergoing treatment since at least 1989 for a variety of ailments, these records do not show that any of these ailments has entirely disabled her from

---

[7] The court reaches this decision fully aware that the dichotomy between physical disorders and mental disorders, somehow supposedly less organic in cause or symptomatology, is a dichotomy which science minimally questions and probably rejects. It is, however, a dichotomy on which the relevant provisions of this plan depend. This court would rather apply modern, rather than primitive, science in deciding cases. Nevertheless, as long as plans are drafted in this language, making clear the parties' intent, and as long as treating doctors opine in such terms, there is very little a court can do, since its obligation is to construe the plan according to its terms and determine whether the administrator acted reasonably, given the information he received from the doctors.

[8] LINA's December 21, 2001 letter to Mallon states that "our review of your claim and the decision to deny benefits beyond 24 months was initially based on the expiration of the maximum period of payment under the Mental and Nervous Disorder provision. The additional information provided on appeal regarding your physical condition was reviewed to determine if the information supported disability as defined by the Plan after 24 months." (MA134.)

working.[9] To the contrary, several of the records submitted by Mallon indicate that she is not totally physically disabled.

Mallon submitted the reports contradicting her claim to total physical disability at various times throughout Mallon's appeals process. For example, Dr. Bhatt's March 8, 2000 statement of disability indicates that Mallon's main diagnosis is for major depression, and also indicates that Mallon is a "suitable candidate" for vocational and psychological rehabilitation services. (MA286.) The March 8 report also indicates a diagnosis of lupus, but does not clearly indicate that lupus is associated with either Mallon's depression or her disability. Dr. Ghani's November 10, 2001 statement of disability makes several diagnoses (allergic rhinitis, sinusitis, lupus, major depression) and seems to state that Mallon is not actually disabled, with Dr. Ghani indicating "n/a" in relation to the form's "extent of disability" section. (MA233.) Supporting this reading, Dr. Ghani's report indicates his opinion that Mallon was capable of limited balancing, reaching, walking, and sitting and frequent light lifting, carrying, pushing and pulling. (*Id.*) Additionally, the March 11, 2002 Functional Capacity Evaluation ordered by Dr. Bednar indicates that "client is able to perform tasks requiring kneeling, overhead work, squatting, stair climbing, balance and crawling . . . at the Light to Sedentary demand levels for work."[10] (MA016.) This evaluation also explicitly recommended that Mallon return to work. *Id.* Dr. Bednar also provided a April 21, 2002 physical ability assessment opining that Mallon "may write or key 30 minutes per hour." (MA014.) Finally, Dr.

---

[9] In addition to this determination, the court notes that even if a *de novo* standard of review were applied to Mallon's claim to be physically disabled, based on the evidence discussed herein, the court would still find that the record does not establish that she was physically disabled so as to be unable to work at all.

[10] Mallon admits that her job at Continental Grain was classified as "light" work. *See also* (MA006.)

Bhatt's September 1, 2001 physician's report indicates that Mallon was not a suitable candidate for physical or psychological rehabilitation services because of her "intractable depression," not because of any physical limitations. (MA179.) Mallon argues that certain other evidence in the record does indicate that she is physically disabled, but the evidence cited by Mallon is either only equivocally supportive of a physical disability, or supports only Mallon's claim for disability based on depression.

In light of the information discussed above, the court holds that LINA did not act unreasonably in finding that Mallon's medical record did not support a physical (as opposed to mental) disability. Thus, LINA was justified in its decision that Mallon was not due LTD benefits beyond the Plan's initial 24 month allowance because her disability was due to depression, a mental disorder, rather than any physical cause.

For the reasons stated, Mallon's motion for summary judgment is denied and the Plan's is granted.

ENTER:

_/s/_____
Joan B. Gottschall
United States District Judge

Dated: March 4, 2005